IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Bobby Gene Wilson, Jr., | ) | C/A No. 0:18-757-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Nancy A. Berryhill, Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 (D.S.C.) and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff, Bobby Gene Wilson, Jr., brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

**SOCIAL SECURITY DISABILITY GENERALLY**

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also

PJG

Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform his past relevant work; and

(5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).



## ADMINISTRATIVE PROCEEDINGS

In 2013, Wilson applied for DIB, alleging disability beginning May 12, 2011. Wilson's application was denied initially and upon reconsideration, and he requested a hearing before an ALJ. A hearing was held on March 1, 2017, at which Wilson, who was represented by Brett Owens, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on March 28, 2017 finding that Wilson was not disabled from his alleged onset date of May 12, 2011 through his date last insured of June 30, 2012.[2] (Tr. 15-27.)

Wilson was born in 1975 and was thirty-six years old on his date last insured. He has a tenth-grade education and has past relevant work experience as a builder and a roofer. (Tr. 216.) Wilson alleged disability due to neuritis lumbosacral, a bulging disc, and degenerative disc disease. (Tr. 215.)

---

[2] The ALJ also noted as follows:

> The claimant has previously filed for disability benefits. On June 6, 2011, the claimant filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning May 12, 2011, which is the same alleged onset date as his current application. This claim was denied initially on November 3, 2011, and upon reconsideration on March 7, 2012. The claimant filed a request for hearing. However, by letter dated March 15, 2013, the claimant, through his representative at the time, asked to withdraw the request for hearing. On March 15, 2013, an Order of Dismissal was issued by Administrative Law Judge Peggy McFadden-Elmore, which dismissed the claimant's request for hearing and indicated that the reconsideration determination of March 7, 2012, remained in effect (Exhibit B-IA).
>
> Accordingly, the doctrine of *res judicata* applies making the March 7, 2012, determination final and binding. The doctrine of *res judicata* prevents the claimant from establishing disability prior to March 7, 2012.

(Tr. 15.)



In applying the five-step sequential process, the ALJ found that Wilson had not engaged in substantial gainful activity since his alleged onset date of May 12, 2011 through his date last insured of June 30, 2012. The ALJ determined that, through the date last insured, Wilson's degenerative disc disease and kidney cyst were severe impairments. However, the ALJ found that, through the date last insured, Wilson had not had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 ("the "Listings"). The ALJ found, after consideration of the entire record that, through the date last insured, Wilson retained the residual functional capacity to

> lift and carry 20 pounds occasionally and 10 pounds frequently; with the ability to sit for six hours in an eight-hour shift; stand and/or walk for six hours out of an eight-hour shift; with alternating between standing and sitting every 60 minutes; limited to occasionally climbing ramps and stairs; occasionally climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; limited to simple routine tasks; and limited to frequent interaction with supervisors, coworkers, and the public.

(Tr. 23.) The ALJ found that, through the date last insured, Wilson was unable to perform any past relevant work, but that considering Wilson's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Wilson could have performed. Therefore, the ALJ found that Wilson had not been disabled from the alleged onset date of May 12, 2011 through the date last insured of June 30, 2012.

The Appeals Council denied Wilson's request for review on January 26, 2018, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported

Page 4 of 18

PJG

by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017); Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589; see also Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589; see also Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

**ISSUES**

Wilson raises the following issues for this judicial review:

I. Did the ALJ err by applying administrative *res judicata* to bar Plaintiff's medical evidence from prior to March 7, 2012?

II. Did the ALJ's reliance on evidence from the period barred by administrative *res judicata* constitute a reopening of the evidence for consideration?

III. Did the ALJ err in finding that Plaintiff's spinal disorders failed to rise to the level of severity to meet the requirements of Listing 1.04?

Page 5 of 18

PJG

IV. Did the ALJ err in concluding that Plaintiff does not suffer from a combination of impairments that meet or medically equal [] the severity of one of the listed impairments?

V. Did the ALJ err in failing to properly weigh the evidence presented by Plaintiff's treating physicians regarding Plaintiff's functional limitations?

(Pl.'s Br., ECF No. 10.)

# DISCUSSION[3]

## A. *Res Judicata*

Wilson's first two arguments hinge on the ALJ's application of *res judicata* in evaluating the current application. Wilson first argues that the ALJ erred in applying *res judicata* to limit consideration of Wilson's evidence to the period of March 7, 2012 through his date last insured, June 30, 2012. Second, Wilson argues that the ALJ's statement that Wilson "was not under disability within the meaning of the Social Security Act at any time, including from March 7, 2012, through June 30, 2012," was contrary to his other statements in the decision and indicates that he reconsidered on the merits Wilson claim for disability prior to March 7, 2012. Wilson also points out that the ALJ summarizes a February 2012 letter from Dr. Benjamin C. Pinner concerning results of a drug screening. (Tr. 18-19.) In this letter, Dr. Pinner states that due to Wilson's dishonesty about the medications Wilson is taking, Dr. Pinner can no longer serve as Wilson's primary care physician and dismisses Wilson as a patient of the practice. (See Tr. 356.) After summarizing this

---

[3] The court notes that numerous social security regulations and social security rulings (SSRs) have changed effective March 27, 2017. However, these changes specifically state that they are applicable to claims filed *on or after* March 27, 2017. See, e.g., 20 C.F.R. §§ 404.1513, 404.1527. Because the instant claim was filed prior to that date, all references in the instant Order are to the prior versions of the regulations which were in effect at the time Wilson's application for benefits was filed, unless otherwise specified.

PJG

letter, the ALJ stated that "[t]he results of the claimant's drug screen do not bolster his allegations in his application for disability." (Tr. 19.) Wilson argues that since the ALJ used evidence from the prior period, the ALJ reopened Wilson's prior claim without properly considering all of the evidence.

The United States Court of Appeals for the Fourth Circuit has explicitly addressed and summarized the law applicable to subject matter jurisdiction and *res judicata* in cases involving claims for Social Security benefits. In McGowen v. Harris, 666 F.2d 60 (4th Cir. 1981), the Fourth Circuit summarized the applicable principles as follows:

> 1. The combined effect of 42 U.S.C. § 405(g) and (h) is to establish a power in the Secretary to deny any social security claim on the basis that it has earlier been denied on the merits by a final administrative decision, *i.e.*, to apply administrative *res judicata* in bar. Easley v. Finch, 431 F.2d 1351, 1353 (4th Cir. 1970).
>
> 2. An earlier administrative decision at any level in the adjudicative process may be final and therefore properly treated as preclusive of a subsequent claim either because the decision has been judicially affirmed or because administrative reconsideration, hearing, or review, or judicial review has not been timely sought. Shrader v. Harris, 631 F.2d 297, 300-01 (4th Cir. 1980); Leviner v. Richardson, 443 F.2d 1338, 1342 (4th Cir. 1971); see also 20 C.F.R. § 404.957(c)(1) (1981) (superseding 20 C.F.R. § 404.937(a) (1980)).
>
> 3. When, following any final administrative decision denying a claim on the merits a claimant files a subsequent claim, the Secretary may properly apply administrative res judicata in bar only if it is the "same" claim earlier denied. 20 C.F.R. § 404.957(c)(1) (1981) (superseding 20 C.F.R. § 404.937(a) (1980)). Whether it is the same claim must necessarily be determined according to general principles of *res judicata* respecting the scope of a claim for purposes of merger and bar as adapted to the social security claim context. See Restatement (Second) of Judgments § 61 (1980). Even though it is the same claim, the Secretary may nevertheless, within time limits and for "good cause" shown, reopen the claim and consider it on the merits, with or without new evidence. 20 C.F.R. § 404.989 (1981) (superseding 20 C.F.R. § 404.958 (1980)).
>
> 4. Assuming that the same claim is involved, and unless a constitutional objection to applying *res judicata* is raised in the district court, see, e.g., Shrader v. Harris, 631 F.2d at 300, the district court is without jurisdiction under 42 U.S.C. § 405(g) to engage in judicial review either of a decision by the Secretary not to reopen the



claim, Califano v. Sanders, 430 U.S. 99 (1977); Matos v. Secretary of Health, Education and Welfare, 581 F.2d 282, 286-87 (1st Cir. 1978), or to apply administrative *res judicata* as a bar to it, Teague v. Califano, 560 F.2d 615, 618 (4th Cir. 1977).

5. On the other hand, if administrative *res judicata* has been applied in bar of a subsequent claim which, properly assessed, is not the same for *res judicata* purposes, jurisdiction to engage in judicial review exists. In that situation the subsequent claim is necessarily, in legal contemplation, a different one whose merits have never been addressed administratively. In consequence the Secretary's decision denying the claim was one as to which the claimant was entitled to a hearing and hence, to judicial review of the denial. Cf. Califano v. Sanders, 430 U.S. at 107-08 (refusal to reopen not reviewable because no entitlement to hearing).

6. By the same token, even though the subsequent claim be the same claim for *res judicata* purposes, if it has nevertheless been reconsidered on the merits to any extent and at any administrative level, it is thereupon properly treated as having been, to that extent, reopened as a matter of administrative discretion under 20 C.F.R. § 404.989 (1981) (superseding 20 C.F.R. [§] 404.958 (1980)). In that event a final decision of the Secretary denying the claim is also subject to judicial review to the extent of the reopening, without regard to the expressed basis for the Secretary's denial. See Farley v. Califano, 599 F.2d 606 (4th Cir. 1979).

7. From this it is evident that upon a challenge to its jurisdiction on the basis that administrative *res judicata* has been applied in bar of a claim, or that discretionary reopening of a previously denied claim has been denied, or both, the district court has jurisdiction to determine, as appropriate, whether *res judicata* has properly been applied, or whether, though *res judicata* might properly have been applied, the claim has nevertheless been reopened. See Farley v. Califano, 599 F.2d at 608 & n.4. In this the court simply exercises its inherent jurisdiction to determine its own jurisdiction. Texas & Pacific Railway v. Gulf, Colorado & Santa Fe Railway, 270 U.S. 266, 274 (1927). If the court determines that jurisdiction exists either because administrative *res judicata* was not properly applied, or because the denied claim has been either formally or by legal implication reopened, it may then of course judicially review the Secretary's final decision denying the claim.

8. In order to make this jurisdictional determination, the district court must have before it a record sufficient to determine the scope of the successive claims for *res judicata* purposes, see Farley v. Califano, 599 F.2d at 608 & n.4; Restatement (Second) of Judgments § 61 (1980), or to determine whether the claim, though subject to administrative *res judicata*, has in fact been administratively reopened to any extent. This may well require that the entire administrative record be made a part of the district court record, but not necessarily. If the identity of claims or the fact of

PJG

reopening is otherwise apparent as a matter of law from the district court record, the determination may of course be made on that basis.

9. The district court is obviously free to make its independent determination, subject to appellate review, of the jurisdictional questions, including the scope of successive claims for *res judicata* purposes and whether a denied claim has been administratively reopened, without regard to any determinations or assertions by the Secretary respecting those matters.

McGowen, 666 F.2d at 65-66.

Applying these principles to the case at hand, the court finds that the filings before the court demonstrate that the Commissioner properly applied *res judicata* to Wilson's DIB claim to the extent Wilson sought disability prior to March 7, 2012 as that claim had previously been denied initially and upon reconsideration and ultimately dismissed. Therefore, the court is without jurisdiction under 42 U.S.C. § 405(g) to engage in judicial review of either the decision by the Commissioner to apply administrative *res judicata* as a bar to Wilson's claim for DIB during that period or the decision not to reopen the DIB claim.

With regard to Wilson's arguments that the ALJ's decision should be treated as having reopened his prior claim, the court finds them unsupported.

> [J]urisdiction to review exists when, even though the Secretary has purported to rest denial of reopening on principles of administrative res judicata, a review of the record discloses that the merits of the claim actually have been reconsidered. Under these limited circumstances, the claim is "properly treated as having been, to that extent, reopened as a matter of administrative discretion under 20 C.F.R. § 404.989."

Hall v. Chater, 52 F.3d 518, 520 (4th Cir. 1995) (quoting McGowen, 666 F.2d at 65). But here, the ALJ's decision repeatedly reflects that treatments notes and opinions from the period barred by *res judicata* were considered only for historical and background purposes. The limited statements relied

Page 9 of 18

PJG

upon by Wilson do not establish that the merits of Wilson's prior claim have been re-evaluated or that the merits of the prior adjudicated claim were being reconsidered.

Accordingly, Wilson's first two arguments are without merit.

**B.     Step Three**

Wilson's next two arguments challenge the ALJ's determination at Step Three. At this step, the Commissioner must determine whether the claimant meets the criteria of one of the Listings and is therefore presumptively disabled. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. § 404.1525(d); see also Bowen v. Yuckert, 482 U.S. 137, 146 (1987) (noting that the burden is on the claimant to establish that his impairment is disabling at Step Three).

Wilson first argues that he met Listing 1.04, which provides as follows:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
or
B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
or
C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular



> pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Wilson argues that he met Listing 1.04 because his "back impairments worsened after being involved in an automobile accident in January of 2013" and points to an MRI following that incident. Wilson appears to argue that these exacerbated symptoms should have related back and should have been considered by the ALJ. However, the applicable standard for DIB requires that the claimant be disabled *on or before* his date last insured, and Wilson's very arguments indicate that the accident in 2013—which was almost a year after his date last insured—exacerbated his symptoms. Wilson's reliance on an MRI from February 2011 that he argues "revealed an annular fissure in the midline posterior disc at L4-L5 and central midline disc protrusion at L5-S1" (Pl.'s Br. at 6, ECF No. 10 at 6) is also unavailing as he has failed to show how it demonstrates that Wilson met any of the above requirements of Listing 1.04.

Wilson also argues that the ALJ erred in failing to consider his impairments in combination. When a claimant has more than one impairment, the ALJ must consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to be the basis of eligibility under the law. 20 C.F.R. § 404.1523. Further, in Walker v. Bowen, 889 F.2d 47, 49-50 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit explained:

> [A] failure to establish disability under the listings by reference to a single, separate impairment does not prevent a disability award. It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity. In recognizing this principle, this Court has on numerous occasions held that in evaluating the effect[] of various impairments upon a disability benefit claimant, the Secretary must consider the combined effect of a claimant's

> impairments and not fragmentize them. . . . As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.

Id. at 49-50 (internal citations omitted). However, "the adequacy requirement of Walker is met if it is clear from the decision as a whole that the Commissioner considered the combined effect of a claimant's impairments." Brown v. Astrue, C/A No. 0:10-cv-1584-RBH, 2012 WL 3716792, at *6 (D.S.C. Aug. 28, 2012) (citing Green v. Chater, 64 F.3d 657, 1995 WL 478032, at *3 (4th Cir. 1995)).

Wilson argues that the ALJ's analysis is deficient because he failed to discuss the impairments in combination at Step Three. However, contrary to Wilson's arguments, the court finds that during the course of the ALJ's opinion, the ALJ sufficiently discussed Wilson's alleged impairments and limitations to demonstrate that he considered Wilson's impairments in combination. Review of the ALJ's decision reveals that the ALJ found no evidence supporting the existence of some of these impairments during the relevant time period and no evidence to support any limitations stemming from some of the alleged impairments. Moreover, the opinion as a whole demonstrates that in analyzing Wilson's residual functional capacity, the ALJ also discussed Wilson's medical records at length, including physical and mental findings and diagnostic images and testing results, as well as his testimony, and addressed conflicts in the records. The ALJ also stated that through the date last insured, Wilson "did not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairments . . . ." (Tr. 23.) For these reasons, the court finds the ALJ's analysis sufficiently demonstrates that he considered the combined effect of Wilson's impairments. See Brown, 2012 WL 3716792, at *6

PJG

(finding that Fourth Circuit precedent issued after Walker suggested that Walker was not meant to be used as a trap for the Commissioner).

Moreover, even assuming Wilson is correct and the ALJ's statements throughout the opinion are not sufficient, Wilson has failed to explain how more discussion or explanation by the ALJ regarding the combined effects of his alleged impairments would change the outcome of this case.[4] See, e.g., Brown, 2012 WL 3716792, at *6 ("If the Commissioner's analysis is fragmentized, it is, of course, the Plaintiff's task to adequately show the Court that the Commissioner's decision could have been different had he done an adequate combined effect analysis of his multiple impairments."). Although Wilson may believe that additional limitations were warranted, he fails to specify them or detail any basis for them. Accordingly, based on a review of the decision as a whole, Wilson has failed to demonstrate that the ALJ failed to consider adequately his combined impairments and has not explained how the outcome would have differed with additional discussion; therefore, remand is not warranted on this basis. See, e.g., Glockner v. Astrue, C/A No. 0:11-955-CMC-PJG, 2012 WL 4092618, at *5 (D.S.C. Sept. 17, 2012) (finding that the ALJ sufficiently discussed the plaintiff's alleged impairments and limitations to demonstrate that he considered the plaintiff's impairments in combination and observing that the plaintiff neither cited an impairment ignored by the ALJ nor offered any explanation as to how more discussion or explanation may have changed the outcome in the case).

---

[4] As indicated above, it is the plaintiff's burden to present evidence that his impairments meet or equal a Listing. Kellough v. Heckler, 785 F.2d 1147, 1152 (4th Cir. 1986). Further, "[i]t is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's [residual functional capacity]." Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003); see also Dollars v. Colvin, No. 5:14-CV-00048-FDW, 2014 WL 6666510, at *3 (W.D.N.C. Nov. 24, 2014) ("It is the claimant's burden, however, to establish his RFC by demonstrating how his impairment impacts his functioning.") (citing 20 C.F.R. §§ 404.1512(c), 416.912(c)).

C.  **Treating Physician**

Finally, Wilson argues that the ALJ erred in discounting opinions dated March 2013 and May 2013 from Dr. John Thompson and a December 2011 opinion from Dr. Robert Roberts. The law applicable to Wilson's application provides that regardless of the source, the Commissioner will evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See id. However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Instead, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. (quoting Craig, 76 F.3d at 590).

First, with regard to Dr. Thompson's opinions, the ALJ found as follows:

> In March 2013, Dr. Thompson completed a Physical Capacities Evaluation and a pain questionnaire. Dr. Thompson has indicated that it is not physically possible for the claimant to work an eight-hour workday. Dr. Thompson has indicated extreme



> limitations including walking for no hours per eight-hour workday and absenteeism of about four workdays per month. However, Dr. Thompson also indicated that the claimant could frequently lift and carry 11-20 pounds. Dr. Thompson stated that the claimant is diagnosed with lumbar spondylosis with L5-S1 disc disease and that the claimant has been felt not to be a surgical candidate by neurosurgery (Exhibit B-10F).
>
> I have given little to no weight to Dr. Thompson's conclusions on these forms. First of all, these conclusions were made nearly 10 months after the claimant's date last insured. Thus, they are too remote to the claimant's conditions regarding the period in question. Secondly, these extreme conclusions appear to be inconsistent with one another. As an example, it seems unlikely that someone who could not stand for any period of time would be capable of frequently lifting and carrying 11-20 pounds. In addition, these extreme restrictions regarding findings including walking and absenteeism are not supported by the treatment notes of record or diagnostic imaging, which have shown limited abnormal findings. It is also important to note that when Dr. Thompson completed these forms in March 2013, he ha[d] not received the treatment records from Dr. Toussaint. Dr. Thompson specifically indicated at an office visit in April 2013 that he did not have these records yet. Dr. Thompson also indicated in his treatment notes at this office visit that they would get Dr. Toussaint's report *before* proceeding with a disability evaluation (emphasis added) (Exhibit B-12F, page 5). While Dr. Thompson indicated at this April 2013 office visit that they would wait on a disability evaluation, he actually did the exact opposite and completed forms in March 2013 and indicated that the claimant was unable to work.
>
> At an office visit in May 2013, Dr. Thompson indicated that he was not sure if the claimant is fully disabled but that he clearly cannot work on his feet and a full-time capacity. Dr. Thompson stated that the claimant does continue to have chronic pain which impairs his sitting and standing. Dr. Thompson stated that the claimant is clearly impaired but that he suspects he is not completely disabled. At this office visit, the claimant indicated that he wanted something for anxiety. Dr. Thompson prescribed Ativan to be taken on an as needed basis (Exhibit B-12F).
>
> I have given little to no weight to Dr. Thompson's statements at the May 2013 office visit. Again, these statements were made nearly a year after the claimant's date last insured. However, it does appear that Dr. Thompson has indicated that the claimant may be capable of some work activities.

(Tr. 21-22.) Wilson's sole challenge the ALJ's evaluation of this evidence is that in discounting the opinions based on the fact that they were issued after the date last insured, the ALJ failed to consider whether this evidence credibly reflected Wilson's conditions prior to his date last insured. Wilson's



argument is unavailing. First, in accordance with applicable law, the ALJ clearly considered whether the limitations suggested related back to Wilson's date last insured; however, the ALJ found that the opinions were too remote. See Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 345 (4th Cir. 2012) (holding that the Commissioner "must give retrospective consideration to medical evidence created after a claimant's last insured date when such evidence may be 'reflective of a possible earlier and progressive degeneration' "). And this was not the only reason offered by the ALJ. The ALJ also found that Dr. Thompson's opinions were contradicted by Dr. Thompson's treatment records, as well as the treatment records and opinions from Dr. C. Philip Toussaint, a neurologist. The ALJ also observed unexplained inconsistencies within the opinion.

> Further, with regard to Dr. Roberts, the ALJ found as follows:
>
> [T]he claimant has also been treated by Dr. Roberts of The Pain Center. The claimant was seen for office visits from February 2011 through January 2012, which is during the time barred by *res judicata*. The claimant was diagnosed with various conditions including sacroiliitis, neuritis, lumbosacral displacement, and lumbago. A cervical spine MRI scan in December 2011 indicated multilevel shallow disc protrusions creating mild degrees of stenoses. In December 2011, Dr. Roberts indicated in a letter "to whom it may concern" that the claimant had been advised that he may not lift/push/pull greater than 10 pounds, and that he should avoid any repetitive bending or twisting. A lumbar spine MRI scan in February 2011 indicated findings of a recurrent annular fissure at L4-5 with non compressive protrusion, and disc protrusion at L5-S1 without neural contact or likely significant stenosis. While the claimant signed a release for an epidural steroid injection in March 2012, it does not appear that the claimant had this procedure completed. In April 2012, the claimant signed a Patient's Code of Conduct. From these records, it appears that the claimant's last actual office visit was in January 2012. These records also include Dr. Pinner's letter and the claimant's drug screen (Exhibits B-1F, B-2F and B-4F).
>
> I have considered Dr. Roberts' letter in December 2011 concerning limitations for the claimant, but I have given it little weight for several reasons. First of all, this letter was completed during the time barred by *res judicata*. Dr. Roberts does not provide any explanation for these limitations. These limitations are not supported by Dr. Roberts' treatment notes or Dr. Pinner's treatment notes, the claimant's two treating physicians at that time. Finally, these limitations are not supported by

*PJG*

> diagnostic imaging completed in December 2011 and February 2012, which showed limited abnormalities.

(Tr. 19.) Wilson argues that the ALJ erred in discounting Dr. Roberts's letter because Dr. Roberts treated Wilson for approximately one year and attempted to relieve Wilson's pain with back injections. Wilson also reiterates his above argument that the ALJ erred in applying *res judicata*. As explained above, Wilson has failed to demonstrate any error by the ALJ in applying *res judicata*. Wilson's remaining arguments are insufficient to demonstrate that the ALJ's discussion of this evidence was unsupported.

Thus, upon thorough review of the ALJ's decision and the record, the court concludes that it is clear that the ALJ applied the factors, to the extent they were applicable, in evaluating the opinion evidence, and finds that Wilson has failed to demonstrate that the ALJ's evaluation of these opinions is unsupported by substantial evidence or based on an incorrect application of the law. See 20 C.F.R. § 404.1527(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted); Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) ("An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' . . . or has failed to give a sufficient reason for the weight afforded a particular opinion[.]") (internal citations omitted); see also 20 C.F.R. § 404.1527(c)(6) (providing as an example of other factors to consider in weighing an opinion, the source's familiarity with other information in the record); 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more

*PJG*

weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

Based on the foregoing, Wilson has failed to demonstrate that the ALJ's conclusions regarding these opinions are unsupported by substantial evidence. In fact, it is clear that the ALJ, as part of his duties in weighing the evidence, properly considered these opinions in accordance with the applicable factors and legal authority. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). Thus, the court finds that Wilson has not shown that the ALJ's decision with regard to the opinion evidence was unsupported by substantial evidence or reached through application of an incorrect legal standard.

## ORDER

For the foregoing reasons, the court finds that Wilson has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. Therefore, it is hereby

**ORDERED** that the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

February 20, 2019  
Columbia, South Carolina

Paige J. Gossett  
UNITED STATES MAGISTRATE JUDGE